IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SCOTT SCHEELER,          :     CIVIL ACTION
                                 :     No. 13-5739
          Plaintiff,             :
                                 :
     v.                          :
                                 :
LEHIGH COUNTY PRISON, et al.,    :
                                 :
          Defendants.            :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    February 12, 2015

          Plaintiff Michael Scott Scheeler ("Plaintiff"), a pro
se prisoner, brings this civil rights action under 42 U.S.C.
§ 1983 against Defendants Lehigh County Prison and three prison
employees: Doug Haines, Robert Dreisbach, and Nancy Afflerbach
(collectively, "Defendants"). The action arises from a nine-day
period in which Plaintiff was housed in a cell in the Restricted
Housing Unit ("RHU"), allegedly without drinking water, toilet
facilities, basic sanitation items, or access to his Bible.
Defendants have filed a motion for summary judgment which, inter
alia, asserts that Plaintiff's claims fail for lack of
exhaustion. For the reasons that follow, the Court will grant
Defendants' motion for summary judgment.

I.    **BACKGROUND**[1]

Plaintiff was taken into custody at Lehigh County Prison on August 15, 2011, as a pretrial detainee. His first court appearance occurred on September 22, 2011, and that evening several local news stations covering his case publicly revealed that he was charged with possession of child pornography. Upon hearing that news, a group of Plaintiff's fellow inmates harassed and threatened him, leading Plaintiff to ask to be placed in protective custody. Thus, on the evening of September 22, 2011, he was taken to the RHU, searched, and placed in a cell.

Plaintiff claims that, upon being transferred to the RHU, he was given his prison clothes, bed sheets, and his legal paperwork, but that he was denied all toiletry items, including soap and toilet paper, as well as access to his Bible. Plaintiff says that he was therefore forced to use his sheets and legal papers in place of toilet paper. He alleges that he asked politely and repeatedly over the next few days for basic toiletries and for his Bible, but his requests were denied by his unit block officer, Defendant Doug Haines. Plaintiff also claims that Haines denied his request for a misconduct response

------

[1]    All facts in this section are taken from Plaintiff's Amended Complaint (ECF No. 11).

2

form on September 22, and his requests for medical request slips on September 27.

On September 27, 2011, while Haines was off duty, a different officer located Plaintiff's Bible and gave it to him. The next morning, however, Haines came back on duty, and Plaintiff alleges that shortly thereafter, the water to his cell was turned off. As a result, Plaintiff says he had no drinking water in his cell (other than the water in the toilet bowl) and he could not flush his toilet. Plaintiff claims that he notified Haines of the situation, but Haines said it would take a few days to fix the problem. Haines also allegedly refused to move him to another cell, despite the availability of open cells in the RHU. Plaintiff further claims that he was not allowed to use a different bathroom, and thus was forced to use the non-flushing toilet--still without any toilet paper--and then live in a cell that smelled of feces and urine. Plaintiff alleges that he was kept in those conditions from September 28 until September 30, when a different officer found Plaintiff lying on the floor of his cell having an asthma attack, at which point he was transferred to a cell with open bars and running water.

According to Plaintiff, another inmate was placed in his previous cell the next morning. That inmate complained to Haines that he had no water, and Haines immediately "went to the officer's station and yelled out, 'try it now,'" at which point

the water began working. Am. Compl. ¶ 59. Based on those facts, Plaintiff contends that Haines deliberately turned off the water to his cell because of the nature of the charges against him.

During the period when Plaintiff had no running water, Defendant Robert Dreisbach, a prison supervisor, walked past his cell and Plaintiff tried to get his attention. Dreisbach allegedly motioned to Plaintiff to wait a moment, but then left and never returned.

Following his transfer to a cell with running water, Plaintiff was given a cellmate named Carmelo Ramos. Plaintiff alleges that Ramos explained to him that he had a history of beating up cellmates, and that the only reason he was placed in a cell with a person with charges like Plaintiff's was because the prison officials wanted Ramos to beat the person up. Plaintiff avers that Ramos then asked Plaintiff what his charges were, and said, "[d]on't try to lie to me because officer Haines has already told me what they are." Id. ¶ 68. Plaintiff says that he then told Ramos about his case and showed him his legal paperwork, and Ramos responded that Plaintiff's case was not as bad as Haines had led him to believe. Plaintiff does not allege that Ramos ever actually caused him physical harm.

On October 16, 2011, Plaintiff was moved from the RHU and placed back into the general prison population, and he was sentenced a month later.

## II.   PROCEDURAL HISTORY

On September 26, 2013, Plaintiff delivered his
Complaint to prison officials at Lehigh County Prison and
requested that it be mailed to the clerk's office. On September
30, his application to proceed in forma pauperis was docketed,
and his Complaint was docketed three days later, on October 3,
2013. ECF Nos. 1, 3. Plaintiff subsequently filed his Amended
Complaint on December 9, 2013.[2] ECF No. 11.

Plaintiff's Amended Complaint contends that while
Plaintiff was housed in the RHU, Defendants violated his
constitutional rights by deliberately exposing him to inhumane
conditions as punishment for the charges against him, by
interfering with the free exercise of his religion, and by
singling him out for negative treatment. He points in particular
to Defendant Haines's actions, alleging that Haines (1) turned
off the water to his cell, leaving him without drinking water or
working toilet facilities for three days; (2) denied him access

---

[2]      On November 18, 2013, before Plaintiff filed his
Amended Complaint, Defendants moved to dismiss the original
Complaint for failure to state a claim. ECF No. 8. Plaintiff
then moved for appointment of counsel (ECF No. 10) and filed an
Amended Complaint (ECF No. 11), which added Primecare Medical as
a defendant. Magistrate Judge Thomas J. Rueter denied Plaintiff's
request for counsel without prejudice, determining that
Plaintiff could respond to the motion to dismiss--which he has
done well--without the assistance of counsel. ECF No. 18. Judge
Rueter indicated that Plaintiff could renew his request after
the Court decided the motion to dismiss.

to toilet paper and soap for nine days (September 22 through
September 30); (3) denied his requests for a misconduct response
form and for medical requests slips; (4) denied him access to
his Bible; and (5) attempted to use an inmate to physically harm
him. Plaintiff also alleges that Defendants Dreisbach and
Afflerbach knew of these conditions and did nothing to prevent
them. Based on those factual allegations, Plaintiff brings
claims under the Fourteenth Amendment, the Eighth Amendment, and
the First Amendment, pursuant to 42 U.S.C. § 1983.

        On December 20, 2013, Defendants moved to dismiss the
Amended Complaint (ECF No. 15), and Defendant Primecare Medical
did the same on February 12, 2014 (ECF No. 24). Plaintiff then
voluntarily dismissed Defendant Primecare Medical, acknowledging
that his claim against it "d[id] not rise to the level of [a]
viable Constitutional claim." ECF No. 28. He maintained his
claims against the remaining Defendants, however, and filed a
response opposing their motion to dismiss. ECF No. 23. After
holding a telephone hearing on March 31, 2014, the Court denied
Defendants' motion. ECF No. 33.

        Defendants filed a motion for summary judgment on July
24, 2014 (ECF No. 40), and after a telephone conference held on
September 3, 2014, the Court denied Defendants' motion for
summary judgment without prejudice--affording Defendants the
opportunity to refile such a motion under the correct legal

standard applicable to inmates who have not yet been sentenced (ECF No. 43).

The Court then issued a scheduling order granting Defendants leave to depose Plaintiff, setting a summary judgment deadline for Defendants, and indicating that, if Defendants moved for summary judgment, the Court would hold a telephone conference to discuss any further discovery Plaintiff required in order to respond to the motion. ECF No. 44.

On November 24, 2014, Defendants filed another motion for summary judgment, arguing, inter alia, that Plaintiff's claims should be dismissed for his failure to exhaust the applicable administrative remedies. ECF No. 45. On January 20, 2015, Plaintiff filed a preliminary response limited to the issue of exhaustion (ECF No. 47), to which Defendants responded on January 28, 2015 (ECF No. 48). The motion is now ripe for disposition on the issue of exhaustion.

## III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle &

Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation; a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.


**IV.  DISCUSSION**

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Failure to exhaust administrative remedies is an affirmative defense

that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (alterations in original) (quoting Porter v. Nussle, 534 U.S 516, 525 (2002)). "Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim." Mitchell v. Dodrill, 696 F. Supp. 2d 454, 463 (M.D. Pa. 2010) (citing Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004); see also Spruill, 372 F.3d at 231 ("[P]rison grievance procedures supply the yardstick for measuring procedural default.").

Here, Defendants contend that "Plaintiff did not file any [formal] grievances or attempt to utilize the prison's grievance process to address his purported claims despite being familiar with the process and despite grievance materials being

available to him." Defs.' Mem. Supp. Mot. Summ. J. 16, ECF No.
45. Accordingly, Defendants argue that Plaintiff has failed to
exhaust his administrative remedies.

Plaintiff does not dispute the fact that he was fully
acquainted with the workings of the prison's grievance policy.
In fact, Plaintiff has submitted at least three written
grievances unrelated to the complaints at issue here. See id. at
15-16. Rather, Plaintiff argues that, as a matter of textual
interpretation, the grievance policy does not require the filing
of a formal, written grievance for an inmate to exhaust his
administrative remedies.

Inmate Grievance Policy § 2.4 defines exhaustion as

> The process under [the] PLRA (specifically 42 U.S.C.
> §1997e(a)) which requires an inmate to complete an
> administrative review of an issue, to include
> following procedural rules and meeting established
> deadlines, as a pre-condition to bringing suit over
> the issue in court. This policy outlines the proper
> administrative remedies and establishes those
> procedural rules and deadlines.

Id. Ex. J. Policy § 2.4 goes on to list a number of issues that
are "grievable, either informally or formally, under this
policy"--including housing unit operations, secured property,
and staff actions. Id. at § 1.A. Plaintiff argues that this
"either informally or formally" language "suggests that both
alternatives are equivalent and acceptable choices," and
indicates that a formal or written grievance is not required for

a claim to be exhausted. Pl.'s Resp. 2, ECF No. 47. Moreover,
Plaintiff contends that further support is found in the
permissive language of § 3B of the policy, which states that
"[s]hould the inmate be unable to resolve the grievance
informally, he may submit a formal grievance . . . ." Defs.'
Mem. Supp. Mot. Summ. J. Ex. J. According to Plaintiff,
"[n]owhere in [the] grievance policy does it state that an
inmate must file a formal written grievance to exhaust." Pl.'s
Resp. 4. Plaintiff, however, misapprehends the clear meaning of
the provisions relating to exhaustion.

        In addition to the portions already discussed, the
relevant provisions of the grievance policy read as follows:

2. General Grievance Information:

. . . .

H. An inmate shall exhaust all administrative remedies
contained in this policy before filing a civil suit
over the grievance. . . .

. . . .

3. Informal Grievance Submission Procedure:

A. An inmate shall attempt to resolve a grievance
informally, with the appropriate and relevant staff
member(s) (usually the staff member's supervisor),
either verbally or in writing, using the "Inmate
Request to Staff" form. It is preferable that an
inmate's concerns be resolved quickly and informally,
rather than through the formal grievance process.
Staff shall attempt to resolve an informal grievance
in an expeditious manner. Staff shall answer written
informal grievances within 14 calendar days of
receipt. If the inmate does not hear back from the

11

staff member, any formal grievance submitted must still meet the submission deadline spelled out below.

B.  Should the inmate be unable to resolve the grievance informally, he may submit a formal grievance per the procedure set forth below. The inmate shall include in the formal grievance submission facts relevant in the attempt to resolve the issue informally, such as names of staff members contacted, answers received from staff members, etc. Failure to attempt to resolve an issue informally is grounds for rejecting a formal grievance. . . .

. . . .

6. Appeal Submission Procedure

A.  The inmate may appeal a grievance restriction decision or a formal grievance decision to the Warden. This is the only appeal available. <u>At the conclusion of the appeal, administrative remedies will have been exhausted</u>, as long as the grievance has not been rejected at any stage.

Defs.' Mem. Supp. Mot. Summ. J. Ex. J, at §§ 2.H., 3, 6.A. (emphasis added). Despite Plaintiff's arguments to the contrary, the language of Defendant's grievance policy makes clear that a formal written grievance is necessary to the extent an inmate seeks to continue the grievance process (after an informal grievance) and fulfill the exhaustion requirements.

The grievance policy expressly states that exhaustion of all administrative remedies is required for a civil action to be brought in federal court (§ 2.H.), and that the policy's procedures must be followed in exhausting said remedies (as laid out in the above-mentioned definition of exhaustion). However, the only other guidance offered on precisely which procedures

must be followed to fully exhaust is found in § 6.A., where it states that "[a]t the conclusion of the appeal [of a formal grievance], administrative remedies will have been exhausted." Unlike this passage, which directly ties exhaustion to the appeal of a formal grievance, exhaustion is never referred to in connection with the informal grievance procedures. Viewed as a whole, and taken provision by provision, the plain meaning of the policy's language indicates that an inmate is required to carry a grievance all the way through the formal process in order to completely exhaust his administrative remedies.

Plaintiff's argument regarding the policy's "either informally or formally" language is unavailing. It is true that an inmate may choose to do either, and that an informal grievance may be a prerequisite to a formal grievance. But there is nothing in the policy that forces an inmate to exhaust administrative remedies, or to take a complaint beyond the informal stage. This permissive language does not imply that merely making an informal complaint fulfills an inmate's obligation to allow the prison the opportunity to fully investigate and address a grievance before it becomes embroiled in civil litigation.

Plaintiff's argument that he did not need to pursue the formal grievance process because his immediate concerns were addressed is similarly unavailing. Plaintiff asserts that he

"was able to resolve his grievances informally, by having his Bible returned to him, his water/toilet restored by moving him from cell 2 to cell 7, soap and toilet paper provided, and finally [by his] transfer[] back to general population . . . ." Pl.'s Resp. 4. Plaintiff asserts that the policy's language implies that a formal grievance is only necessary if a complaint is not resolved by the informal process--and his problems were already resolved. If that were true, however, Plaintiff would not be seeking vindication here in federal court. The resolution of Plaintiff's immediate complaints did not undo the deprivations that allegedly occurred, which should have been made the subject of a subsequent formal complaint through the appropriate administrative channels.

In Arnold v. Ayala, No. 10-7571 (E.D. Pa. March 22, 2013), Chief Judge Emeritus J. Curtis Joyner addressed an inmate's failure to exhaust under this very same prison's grievance policy. In entering an order on March 22, 2013, granting the defendant's motion for summary judgment (ECF No. 48) (which was subsequently vacated (ECF No. 60) and then reinstated (ECF No. 83)), Judge Joyner wrote:

> According to the Lehigh County Prison inmate grievance policy, an [Inmate's Request to Staff ("IRS")] is the first step in the grievance procedure, in which a prisoner attempts to resolve the conflict informally. If this fails to resolve the conflict, the policy requires the inmate to file an "Inmate Formal Grievance" subject to further consideration and

14

> <u>potential appeal.</u> Plaintiff never submitted a formal
> grievance after receiving responses to his IRS forms.
> It appears Plaintiff is aware of the formal grievance
> procedure because he submitted formal grievances on
> three occasions in the preceding months concerning an
> unrelated incident. Because Plaintiff has not
> exhausted his administrative remedies as provided by
> Lehigh County Prison, his claim must be dismissed.

Order, March 22, 2012, at 1 n.1, <u>Arnold</u>, No. 10-7571, ECF No. 48
(emphasis added) (citations omitted). Thus, when confronting the
same grievance policy at issue in the instant case, another
court in this district reached the same conclusion that the
policy requires inmates to pursue grievances through the formal
process in order to meet their exhaustion requirements.

This Court agrees with the court in <u>Arnold</u>, and
concludes that there is no genuine issue of material fact
regarding the requirement that inmates like Plaintiff must fully
pursue the formal grievance process in order to exhaust their
claims. Plaintiff has failed to exhaust his claims, and
therefore, they must be dismissed.

**V.   CONCLUSION**

For the foregoing reasons, the Court will grant
Defendants' motion for summary judgment. An appropriate order
follows.